**MARK B. FROST & ASSOCIATES**          ATTORNEYS FOR PLAINTIFF
Mark B. Frost, Esquire
Dylan T. Hastings, Esquire
1515 Market Street, Suite 1300
Philadelphia, PA 19102
215-351-3333

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

_____
**MIKAYLA DUFFALO, individually and**          :
**as administrator of the Estate of**          :          **CIVIL ACTION**
**MICHAEL J. DUFFALO,**          :          **No.** 3:21-cv-39
          :
          **Plaintiff,**          :
**v.**          :
          :          **JURY TRIAL DEMANDED**
**WARDEN THOMAS ELBEL**          :
**in his official and individual capacity,**          :
**JEFFERSON COUNTY JAIL**          :
**CORRECTIONS OFFICERS JOHN**          :
**AND JANE DOE 1-20**          :
**in their individual and official capacities,**          :
**WARDEN GREGORY COLLINS**          :
**in his official and individual capacity,**          :
**CLEARFIELD COUNTY JAIL**          :
**CORRECTIONS OFFICERS JOHN**          :
**AND JANE DOE 1-20**          :
**in their individual and official capacities,**          :
**PENNSYLVANIA STATE POLICE,**          :
**TROOPERS JOHN AND JANE DOE 1-20**          :
**in their individual and official capacities,**          :
**JEFFERSON COUNTY**          :
**SHERRIFF'S DEPARTMENT, and**          :
**SHERRIFF'S OFFICERS JOHN**          :
**AND DOES 1-20**          :
**in their official and individual capacities,**          :
          :          **COMPLAINT**
          **Defendants.**          :
_____:

## <u>INTRODUCTION</u>

1.      This case arises out of the permanent injuries and death suffered by Michael J. Duffalo as

        a result of the deliberative indifference to his obvious medical needs. As a result of

Defendants' conduct, Decedent suffered great pain and death.

## JURISDICTION & VENUE

2.  This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth, Eighth and Fourteenth Amendments to the United States Constitution.  Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

3.  Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

4.  The amount in controversy exclusive of interest and costs exceeds the sum of one hundred thousand ($100,000.00) Dollars.

5.  All claims herein arose within the jurisdiction of the United States District Court for the Western District of Pennsylvania and involve Defendants who reside within the jurisdictional limits.  Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

## PARTIES

6.  Mikayla Duffalo is an individual citizen of the Commonwealth of Pennsylvania and County of Jefferson, residing therein at 1803 7th Avenue, Apt. A3, Brockway, PA 15824 ("Plaintiff").

7.  Michael J. Duffalo was born on March 7, 1981 and passed away on March 10, 2019 ("Decedent").

8.  Plaintiff was appointed the Administratrix of Decedent's estate on July 19, 2020.

9.  Thomas Elbel is an individual citizen of the Commonwealth of Pennsylvania and County of Jefferson, residing in Punxsutawney, PA.

10. At all material times hereto, Thomas Elbel served as Jefferson Count Jail's warden

("Defendant Elbel").

11.     At all material times hereto, Jefferson County Jail Corrections Officers John and Jane Doe 1-20 served under the direction of Defendant Elbel ("Defendant Jefferson Officers").

12.     Greg Collins is an individual citizen of the Commonwealth of Pennsylvania and County of Clearfield, residing in Clearfield, PA.

13.     At all material times hereto, Greg Collins served as Clearfield County Jail's warden ("Defendant Collins").

14.     At all material times hereto, Clearfield County Jail Corrections Officers John and Jane Doe 1-20 served under the direction of Defendant Collins ("Defendant Clearfield Corrections Officers").

15.     The Pennsylvania State Police "Troop C" headquarters are located at 485 North Findley Street, Punxsutawney, PA 15767 (the "State Police").

16.     At all material times hereto, Troopers John and Jane Does 1-20 served as Pennsylvania State Troopers ("Defendant Troopers").

17.     The Jefferson County Sheriff's Office is located at 200 Main Street, Brookville, PA 15825 (the "Sheriff's Office").

18.     At all material times hereto, Sheriff's Officers John and Jane Doe 1-20 served as Jefferson County Sheriff's Officers ("Defendant Sheriff's Officers").

## FACTS

19.     Plaintiff incorporates the above paragraphs as if they were set forth fully herein.

20.     On or about March 4, 2019, Decedent was involved in a domestic disturbance with his partner at his home located at 1803 7th Avenue, Apt. A3 Brockway, PA 15284.

21.     During the domestic disturbance, Decedent held a knife to his head a threatened to kill

himself.

22.    Decedent was experiencing a mental breakdown.

23.    As a result of the domestic disturbance, 911 was called and Defendant Troopers and Defendant Sheriff's Officers arrived at Decedent's home.

24.    Upon the arrival of the Defendant Troopers and Defendant Sheriff's Officers, Decedent was in an incoherent and disgruntled state, and was obviously suffering from a mental breakdown; it was obvious that Decedent was in need of medical treatment.

25.    Rather, Decedent was immediately tased by the Defendant Troopers and/or Defendant Sherriff's Officers.

26.    Decedent was subsequently arrested and transported to Jefferson by the Defendant Troopers and/or Defendant Sheriff's Officers.

27.    Given Decedent's obvious mental breakdown, the Defendant Troopers and/or Defendant Sheriff's Officers should have immediately brought Decedent to a medical facility due to his urgent need for medical treatment.

28.    The Defendant Troopers and/or Defendant Sheriff's Officers knew or should have known that Decedent required immediate medical treatment as a result of Decedent's obvious mental breakdown.

29.    Rather than taking Decedent to a medical facility, the Defendant Troopers and/or Defendant Sheriff's Officers transported him to Jefferson where he did not receive any treatment for his obvious mental breakdown; Decedent's obvious mental breakdown necessitated medical treatment.

30.    Upon information and belief, the Defendant Troopers and/or Defendant Sheriff's Officers failed to inform Jefferson that Decedent was experiencing a mental breakdown and was in

need of medical treatment.

31.     The State Police and/or the Sheriff's Office were aware of the deficient policies, procedures, customs and practices being implemented and utilized relating to addressing and assessing individuals' mental health issues, such as Decedent's mental breakdown, at the time of Decedent's arrest.

32.     Upon information and belief, Decedent did not receive a mental health and/or a suicide screening and/or drug test upon his arrival to Jefferson.

33.     It was obvious to the Defendant Jefferson Corrections Officers that Decedent was experiencing a mental breakdown and was in need of medical treatment.

34.     Shortly after Decedent arrived at Jefferson, it was learned that a Clearfield County Judge previously issued a warrant for his arrest for his failure to appear at a court hearing arising out of misdemeanor theft charges.

35.     As a result, Decedent was transferred to Clearfield on or about March 5, 2019.

36.     Upon information and belief, Jefferson and/or Defendant Jefferson Officers failed to inform and/or notify Clearfield that Decedent was experiencing a mental breakdown and was in need of medical treatment.

37.     At this time, Decedent was experiencing an obvious mental breakdown and was in need of medical treatment.

38.     Upon information and belief, several suicide deaths of inmates had taken place at Jefferson in the years prior to and following Decedent's incarceration at Jefferson.  Defendant Elbel was aware of the deficient policies, procedures, customs and practices being implemented and utilized by Jefferson relating to suicide prevention and/or mental health and/or drug screening at the time of Decedent's death.

39.   Defendant Elbel was aware of suicide deaths of inmates at Jefferson prior to and following Decedent's incarceration, and was also aware of the prison staff's failure to properly screen inmates for suicide risk and/or mental health disturbances and/or drugs, and failure to take other steps to prevent suicide deaths and violations of inmate's constitutional rights.

40.   Upon information and belief, Decedent did not receive a mental health evaluation and/or suicide screening and/or or drug test upon his arrival to Clearfield despite his obvious mental breakdown; Decedent required medical treatment.

41.   It was obvious to the Defendant Clearfield Corrections Officers that Decedent was experiencing a mental breakdown and was in need of medical treatment.

42.   As a result of Clearfield's overpopulation at the time of Decedent's incarceration, Decedent was placed in a common area, rather than a cell, and was not provided clothes or bedding to keep him warm, or even a bed to sleep on.

43.   In fact, Decedent was forced to sleep on the floor with a sheet and even used the underwear of another inmate to keep his head warm; these conditions persisted throughout Decedent's incarceration.

44.   Decedent's poor living conditions only worsened his mental breakdown which became even more obvious to the Defendant Clearfield Corrections Officers.

45.   On March 10, 2019, at or around 6:00 a.m., a routine prisoner count was performed by the Defendant Clearfield Officers who were on duty at that time.

46.   Due to Clearfield's significant overpopulation, Decedent was still housed in a common area at this time.

47.   Within the hour, Decedent was found dead hanging from a bedsheet tied to the ceiling in the common area where he was housed.

48.    It was discovered that Decedent removed a ceiling tile covering a metal bar that was well within his reach which he hung the sheet from that he used to hang himself.

49.    Upon information and belief, several suicide deaths of inmates had taken place at Clearfield in the years prior to and following Decedent's death.  Defendant Collins was aware of the deficient policies, procedures, customs and practices being implemented and utilized by Clearfield relating to suicide prevention and/or mental health screening and/or drug testing at the time of Decedent's death.

50.    Defendant Collins was aware of suicide deaths of inmates at Clearfield prior to and following Decedent's death, and was also aware of the prison staff's failure to properly supervise inmates, failure to provide adequate health care, failure to take other steps to prevent suicide deaths, and violations of inmate's constitutional rights.

51.    Upon information and belief, Clearfield failed to perform a timely investigation into the events surrounding Decedent's death.

**COUNT I**
**PLAINTIFF V. ALL DEFENDANTS**
**VIOLATIONS OF 42 U.S.C. § 1983**

52.    Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

53.    Defendants acting under color of law, provided inadequate supervision and failed to take adequate safety precautions to prevent inmate suicides.

54.    Defendants, through the aforesaid actions, were intentional, deliberately indifferent and reckless with respect to Decedent's obvious medical needs in violation Decedent's constitutional rights, under the 8th and 14th Amendments to the Constitution.

55.    The aforesaid acts of Defendants shock the conscience and constitute an unnecessary,

wanton infliction of harm for no good faith purpose.

56.     As a direct and proximate result of the aforesaid acts of Defendants, Decedent suffered

death, severe bodily injury, pain, emotional distress, loss of pleasure and enjoyment of life,

lost wages, lost wage earning capacity, and all other damages set forth above.

WHEREFORE, Plaintiff demands judgment against Defendants in an amount in excess of

One Hundred Thousand Dollars ($100,000) plus interest, costs, attorney's fees and punitive

damages.

## COUNT II
### PLAINTIFF V. THOMAS ELBEL, GREG COLLINS, PENNSYLVANIA STATE POLICE, AND JEFFERSON COUNTY SHERIFF'S OFFICE
### <u>VIOLATIONS OF 42 U.S.C. § 1983</u>

57.     Plaintiff incorporates by reference the preceding allegations of this Complaint as though

each were individually set forth herein at length.

58.     Defendant Elbel, Defendant Collins, the State Police, and the Sheriff's Office failed to

properly train and supervise the individual John and Jane Doe Defendants with regard to,

but not limited to, addressing and assessing individuals' mental health needs, suicide

prevention, and/or overall inmate safety. This included but is not limited to implementing

facially deficient policies, failing to implement sufficient policies, and failing to train the

individual John and Jane Doe Defendants with regard to said policies.

59.     As set forth above, a pattern of preventable inmate deaths occurred prior and subsequent

to the death of Decedent.

60.     The aforesaid acts and omissions, undertaken under color of law, were collectively the

cause of Decedent's death.

61.     As a direct and proximate result, Decedent suffered death and grievous bodily harm and

was deprived of his rights under the laws and Constitution of the United States, in

particular, the Eighth and Fourteenth Amendment to the United States Constitution, the due process clause of the United States Constitution, and 42 U.S.C. §1983, and was further in violation of the Statutes of the Commonwealth of Pennsylvania..

62.     As a direct and proximate result of the aforesaid acts of Defendants, Decedent suffered death, severe bodily injury, pain, emotional distress, loss of pleasure and enjoyment of life, lost wages, lost wage earning capacity, and all other damages set forth above.

**COUNT III**
**PLAINTIFF V. ALL DEFENDANTS**
**<u>WRONGFUL DEATH</u>**

63.     Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

64.     Plaintiff bring this action pursuant to the Pennsylvania Wrongful Death Act, 42 Pa.C.S. 8301 and Pa.R.Civ.P. 2202(a).

65.     Plaintiff brings this action as Administratrix of the Decedent's estate and on behalf of his heirs.

66.     The decedent is survived by Plaintiff.

67.     Plaintiff and Decedent's estate, are entitled to recover damages for Decedent's death.

68.     Decedent did not bring an action for personal injuries during his lifetime, and no other action for his death has been commenced against any of the above defendants.

69.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff is entitled to recover the following damages: (a) funeral expenses, (b) the expenses of administration related to Decedent's injuries, (c) deprivation and injury as a result of the loss of the support, consortium, comfort, counsel, aid, association, care and services of Decedent, and (d) any such other damages as are permissible in a wrongful death action.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**MARK B. FROST & ASSOCIATES**

*/s/ Dylan T. Hastings*
Mark B. Frost, Esquire
Dylan T. Hastings, Esquire
1515 Market Street, Suite 1300
Philadelphia, PA 19102
P: (215) 351-3333
F: (215) 351-3332
mfrost@mfrostlaw.com
dhastings@mfrostlaw.com

*Attorneys for Plaintiff*

Dated: March 10, 2021