IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MIKAYLA DUFFALO**, individually and as administratrix of the Estate of **MICHAEL J. DUFFALO**, | CIVIL ACTION No. 3:21-cv-00039-KRG |
| **Plaintiff,** v. | JURY TRIAL DEMANDED |
| **CLEARFIELD COUNTY BOARD OF COMMISSIONERS, CLEARFIELD COUNTY PRISON BOARD, GREGORY COLLINS, NULTON DIAGNOSTIC & TREATMENT CENTER, DANIELLE DELIMAN, BRADLEY L. WELKER, LEO CLEVELAND, AND JOHN AND JANE DOES 1-20,** | |
| **Defendants.** | |

## AMENDED COMPLAINT

### NATURE OF ACTION

1. This is an action for damages and other relief arising from the death of Michael J. Duffalo, who died on March 10, 2019, while he was an inmate held in Clearfield County Jail in Pennsylvania. It is brough under 42 U.S.C. § 1983, and the laws of Pennsylvania.

### JURISDICTION & VENUE

2. This action is brought pursuant to 42 U.S.C. § 1983 and the Eighth and Fourteenth Amendments to the United States Constitution. Jurisdiction is founded on 28 U.S.C. §§ 1331 and 1343(3) and the aforementioned statutory and constitutional provisions.

3. Jurisdiction lies over state law claims based on the principles of supplemental jurisdiction, as codified at 28 U.S.C. § 1367.

4. The amount in controversy exclusive of interest and costs exceeds the sum of one hundred thousand ($100,000.00) Dollars.

5. All claims herein arose within the jurisdiction of the United States District Court for the Western District of Pennsylvania and involve Defendants who reside within the jurisdictional limits. Venue is accordingly invoked pursuant to the dictates of 28 U.S.C. § 1391(b) and (c).

**PARTIES**

6. Mikayla Duffalo is an individual citizen of the Commonwealth of Pennsylvania and County of Jefferson, residing therein at 1803 7th Avenue, Apt. A3, Brockway, PA 15824 ("Plaintiff").

7. Michael J. Duffalo was born on March 7, 1981 and passed away on March 10, 2019 ("Decedent").

8. Plaintiff was appointed the Administratrix of Decedent's estate on July 19, 2020; she is the only beneficiary of Decedent's estate.

9. Defendant Clearfield County Board of Commissioners is the executive authority of Clearfield County, Pennsylvania, duly organized under the laws of the Commonwealth (the "Commissioners"). The Commissioners are responsible for the operation and control of the Clearfield County Jail ("CCJ").

10. Defendant Clearfield County Prison Board is an agency of the government of Clearfield County (the "Board"). Comprised of the Commissioners and several other officials, it is charged with promulgating and implementing practices and policies governing the operation of CCJ including practices and policies affecting the treatment, classification, safety, and rights of CCJ's inmates.

11. Defendant Gregory Collins was, at all times material hereto, an employee of Clearfield County, and warden of CCJ ("Warden Collins"). He occupied a supervisory position, responsible for implementing and maintaining procedures to provide adequate physical and mental health treatment to CCJ inmates with respect to serious medical and mental health needs.

12. Defendant Bradley L. Welker was, at all times material hereto, employed by CCJ as a corrections officer ("Officer Welker").

13. Defendant Leo Cleveland was, at all times material hereto, employed by CCJ as a corrections officer ("Officer Cleveland").

14. Defendant Nulton Diagnostic & Treatment Center is a for-profit corporation organized under Pennsylvania law, with a principal place of business at 214 College Park Plaza, Johnstown, PA 15904 ("Nulton"). By contract with the Commissioners and/or its agencies, Nulton was at all times material hereto, responsible for all medical and mental health treatment and evaluation of inmates of CCJ, including Decedent.

15. Danielle Deliman is mental health worker who, at all times material hereto, was employed by Nulton to provide services, including assessments of suicide risk for inmates of CCJ ("Deliman"). At all times material hereto, Deliman acted within the course and scope of her employment with Nulton.

16. The John and Jane Doe defendants are individual corrections officers or members of CCJ's staff who knew or should have known of a serious risk of harm to Decedent, and were in a position to provide him services to address the risk, but failed to do so.

**FACTS**

17. Plaintiff incorporates the above paragraphs as if they were set forth fully herein.

18. On or about March 4, 2019, Decedent was involved in a domestic disturbance with his partner at his home located at 1803 7th Avenue, Apt. A3 Brockway, PA 15284.

19. Decedent was subsequently arrested and transported to Jefferson County Jail by the responding police officers.

20. Within hours, Plaintiff was transferred to CCJ on an outstanding bench warrant.

21. At this time, Decedent was experiencing an obvious mental breakdown, was under the influence of narcotics/suffering from withdrawal symptoms and was in need of immediate medical care.

22. Upon his arrival to CCJ on March 5, 2019, Officer Welker completed a "Booking Observation Report" for Decedent.

23. Officer Welker's report indicates that Decedent was crying in the car during his transportation from Jefferson County Jail to CCJ, was very worried about his situation, was a daily drug user, was overly anxious, was embarrassed/ashamed of his situation, had a lack of coordination/unsteady gait, was disheveled, was "in and out of it at times," and appeared to be under the influence of narcotics.

24. Despite all of Officer Welker's findings, he did not deem Decedent a suicide risk and failed to provide Decedent essential services including but not limited to heightened observation and shortened intervals, removal from means of suicide, and prompt examination by a qualified mental health profession; all of which were otherwise available at CCJ.

25. To the contrary, while Decedent was under the influence of narcotics, suffering from a mental breakdown and/or suffering from withdrawal symptoms, he was placed in a holding

cell without any extraordinary or other precautions specifically designed to reduce suicidal risks.

26. It would not be until March 7, 2019 when Decedent would receive a mental health screening from Deliman at CCJ.

27. Deliman is not a licensed medical professional.

28. During Decedent's mental health screening, Deliman found Decedent's appearance to be unkempt, his sleep to be poor because of the cold, and his intellectual functioning average among other findings.

29. During the screening, Decedent expressed to Deliman that he had feelings of hopelessness, had frequent mood changes, was depressed, had worries that he could not get rid of, felt like he was on an emotional roller coaster, was irritable to the point that he would shout at people, lacked interest in activities that once excited him, repressed certain feelings and memories, constantly felt on guard, and had a history of mental health treatment.

30. Further, Decedent informed Deliman that he was a daily narcotics user and had experienced symptoms of withdrawal in the past.

31. Deliman diagnosed Decedent with Major Depressive Disorder.

32. However, despite all Deliman's findings, she did not deem Decedent a suicide risk and failed to provide Decedent essential services including but not limited to heightened observation and shortened intervals, removal from means of suicide, and prompt examination by a qualified mental health profession; all of which were otherwise available at CCJ.

33. No one from CCJ or Nulton took any action to prevent or decrease the risk of Decedent committing suicide despite his known risks.

34. On March 10, 2019, at approximately 12:30 a.m., Decedent asked Officer Cleveland for a second bed sheet; Officer Cleveland later learned that Decedent had been asking

other officers for a second bed sheet the previous night. However, a second bed sheet was not provided.

35. Officer Cleveland, as well as CCJ's other correctional officers, was aware that bed sheets are commonly used by inmates to commit suicide.

36. Officer Cleveland did not take any steps to investigate Decedent's request for a second bed sheet, the reasons for his request, or alert his supervisors of Decedent's request.

37. On the same day, at or around 6:04 a.m., a routine standing prisoner count was performed in CCJ's I-Block where Decedent was housed.

38. Approximately 6 minutes later, Decedent was found hanging from a bedsheet that was tied to a vent in the ceiling.

39. At approximately 6:11 a.m., officers entered Decedent's cell and began to administer CPR, but their efforts would prove unsuccessful. By the time the officers and other CCJ staff arrived at the scene, it was too late to save or resuscitate Decedent, and he was pronounced dead shortly thereafter.

40. Before his death, Decedent suffered extreme conscious pain and suffering, terror of death and emotional distress—all normal consequences of hanging. As a result of his death, his estate and Plaintiff suffered other damages, including but not limited to loss of earnings and destruction of earning capacity; loss of life's pleasures, and all other damages cognizable under Pennsylvania "Survival" and "Wrongful Death" statutes.

41. As alleged in greater detail hereinbelow, Decedent's death and related damages were caused by the culpable conduct of defendants, all in violation of his Constitutional Rights.

## COUNT I
## PLAINTIFF V. THE COMMISSIONERS, THE BOARD, AND WARDEN COLLINS
## <u>VIOLATIONS OF 42 U.S.C. § 1983</u>

42. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

43. The above-averred violations of Decedent's Constitutional rights under the Eighth and Fourteenth Amendments occurred as a result of the customs, policies, and practices of the Commissioners, the Board, and their policy making official, Warden Collins (collectively "Defendants").

44. At all times material hereto, Defendants knew that inmates in the condition and position of Decedent had serious medical needs and faced a serious risk of harm.

45. Despite that knowledge, Defendants implemented and maintained long-standing practices, customs and/or policies at CCJ that encouraged, endorsed, or permitted failures to provide adequate guarantees of inmate safety and appropriate treatment, all in violation of duties imposed on them by the Fourteenth Amendment.

46. These customs, policies and practices included, but were not limited to Defendants':

   a. Failure to train jail staff and corrections officers to detect, evaluate, and/or decrease the risk of suicide of highly vulnerable and/or mentally ill inmates;

   b. Failure to promulgate or implement procedures for the prevention of inmate suicide;

   c. Failure to promulgate or implement procedures for the timely and adequate evaluation of mentally ill inmates, and/or those with a high risk of suicide;

   d. Endorsement and acceptance of Nulton's long-standing pattern and practice of failing to provide prompt and adequate mental evaluations of inmates;

   e. Failure to provide psychiatrists or other physicians qualified to treat the needs of mentally ill inmates, or to ameliorate the risks of suicide; and

    f.   Failure to maintain adequate written policies and protocols for the recognition and reduction of suicide among inmates.

47.    Decedent's death, and the associated harms and damages averred hereinabove, occurred as a result of these Constitutionally defective practices, policies and procedures, all in violation of Decedent's Constitutional rights.

## COUNT II
## PLAINTIFF V. OFFICER WELKER, NULTON, DELIMAN, AND JOHN AND JANE DOES 1-20
## VIOLATIONS OF 42 U.S.C. § 1983

48.    Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

49.    Officer Welker and Deliman were aware that Decedent was under the influence of narcotics, suffering from withdrawal symptoms, was depressed, and/or was anxious during his incarceration at CCJ, and that, as a result, he was at a heightened risk of injury, including self-harm.

50.    With the same deliberate indifference, Officer Welker and Deliman subjected Decedent to an increased danger of suicide by clearing him for entry into CCJ's general population where he had access to the means of suicide.  Officer Welker and Deliman did this despite their actual knowledge of Decedent's extensive mental health history, drug use, withdrawal symptoms, debilitated mental condition, substantial risk of suicide, and the fact that he had not received appropriate psychiatric or professional treatment or evaluation for medical clearance prior to his placement in general population.

51.    Officer Welker and Deliman's conduct violated Decedent's rights under the Eighth and Fourteenth Amendments of the United States Constitution.

52.    As a result of the violation of his Constitutional rights, Decedent suffered death, and related harms, including but not limited to pain and suffering, and lost earning capacity.

## COUNT III
## PLAINTIFF V. OFFICER CLEVELAND AND JOHN AND JANE DOES 1-20
## VIOLATIONS OF 42 U.S.C. § 1983

53. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

54. Officer Cleveland was aware that Decedent was under the influence of narcotics, was suffering from withdrawal symptoms, was depressed, and/or was anxious during his incarceration at CCJ, and that, as a result, he was at a heightened risk of injury, including self-harm.

55. Moreover, Officer Cleveland took no action after Decedent asked him for a second bed sheet just hours before his suicide which Officer Cleveland ignored despite knowing that bed sheets are commonly used by inmates as a tool for suicide.

56. Officer Cleveland's failure to take reasonable measures to guarantee Decedent's safety constitutes a violation of Decedent's Eight and Fourteenth Amendment rights.

57. As a result of the violation of his Constitutional rights, Decedent suffered death, and related harms, including but not limited to pain and suffering, and lost earning capacity.

## COUNT IV
## PLAINTIFF V. NULTON
## VIOLATIONS OF 42 U.S.C. § 1983

58. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

59. The conduct of Deliman comprising violation(s) of Decedent's rights under the Eighth and Fourteenth Amendments was caused by and consistent with practices, policies, and procedures deliberately implemented and maintained by Nulton.

60. These practices, policies, and procedures included, but were not limited to Nulton's:

9

    a. Failure to ensure that mental health inmates are seen timely by a psychiatrist or other appropriate provider;

    b. Failure to implement procedures for the evaluation and proper treatment and placement of mentally ill or suicidal inmates;

    c. Failure to maintain proper policies and procedures for transfers into segregated cells;

    d. Failure to adequately train Nulton staff with respect to mental health evaluation, mental health treatment, and the recognition of suicide risk and the prevention of suicide;

    e. Failure to provide adequate staff for the mental health evaluation and mental health treatment of inmates;

    f. Failure to provide adequate psychiatric coverage;

    g. Failure to provide prompt mental health treatment;

    h. Failure to ensure proper review of inmates' medical history;

    i. Failure to ensure proper maintenance of "suicide watch" procedures; and

    j. Failure to provide appropriate psychotropic medication on a timely basis.

61. Decedent's death, and the harms related thereto, resulted from the Constitutional violations arising from Nulton's aforesaid practices, policies, and procedures.

## COUNT V
## PLAINTIFF v. NULTON, DELIMAN, AND JOHN AND JANE DOES 1-20
## PROFESSIONAIL NEGLIGENCE
## [Collectively Referenced as the "Nulton Defendants"]

62. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

63. Decedent's death, and the harms related thereto, occurred as a result of the negligent acts and omissions of Nulton and its employee, Deliman.

64. Said negligence included, but was not limited to:

    a. Nulton's failure to train its employees and agents adequately with respect to the

evaluation and treatment of mentally ill inmates;

b. Nulton's failure to train its employees and agents with respect to the recognition and reduction of suicidal risk;

c. Nulton's failure to implement procedures for the timely and adequate mental health evaluation of inmates;

d. Nulton's failure to implement procedures to ensure proper review of inmate's medical history;

e. The Nulton Defendants' failure to recognize and properly treat the risk of suicide by Defendant;

f. The Nulton Defendants' failure to ensure proper review of Decedent's medical history;

g. The Nulton Defendants' failure to ensure that Decedent received a consultation and treatment from a psychiatrist, despite their knowledge of the need to do so;

h. The Nulton Defendants' failure to coordinate surveillance of Decedent while in his cell;

i. The Nulton Defendants' failure to obtain or review Decedent's medical records;

j. The Nulton Defendants' negligent placement of Decedent in general population without an adequate mental health evaluation;

k. The Nulton Defendants' failure to communicate Decedent's suicide risk or its gravity to CCJ's staff and appropriate corrections officers;

l. The Nulton Defendants' failure to evaluate Decedent's need for medication, and their failure to recommend or prescribe appropriate medication;

m. The Nulton Defendants' failure to provide or recommend any mental health treatment whatsoever; and

n. Such other negligence as will be ascertained in the course of discovery.

65. The above-averred negligence of the Nulton Defendants' resulted in Decedent's death and the associated harms and damages as alleged herein.

## COUNT VI
## WRONGFUL DEATH

66. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

67. Plaintiff claims the right to prosecute this action on behalf of the beneficiaries of Decedent's estate, and to recover all damages allowable under Pennsylvania's Wrongful Death Act, 42 Pa. C.S.A. § 8801, including but not limited to all pecuniary loss of any current or anticipated financial contributions from Decedent.

## COUNT VII
## SURVIVAL

68. Plaintiff incorporates by reference the preceding allegations of this Complaint as though each were individually set forth herein at length.

69. Plaintiff claims the right to prosecute this action and recover on behalf of Decedent's estate all damages allowable under Pennsylvania's Survival Act, 42 Pa. C.S.A. § 8302, including but not limited to Decedent's pain, suffering and emotional distress, dread and apprehension of impending death, loss of life's pleasures, and loss of earnings and earnings capacity.

## JURY TRIAL DEMAND

70. Plaintiff hereby demands a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Court to enter judgment in her favor and against Defendants, and to:

o. Award her general and compensatory damages;

p. Award her exemplary damages;

q. Award her reasonable attorney's fees, and the costs of this litigation, as well as such

      interest allowed by law, and

r. Provide such other relief as this Court deems just and equitable.

 

Respectfully submitted,

**MARK B. FROST & ASSOCIATES**

*/s/ Dylan T. Hastings*
Mark B. Frost, Esquire
Dylan T. Hastings, Esquire
1515 Market Street, Suite 1300
Philadelphia, PA 19102
P: (215) 351-3333
F: (215) 351-3332
mfrost@mfrostlaw.com
dhastings@mfrostlaw.com

*Attorneys for Plaintiff*

Dated: July 14, 2021